UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY CLAYBORNE, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LITHIA MOTORS, INC., an Oregon corporation; LITHIA MOTORS SUPPORT SERVICES, INC., an Oregon corporation; and DOES 1 through 50 inclusive,<br><br>Defendants. | CASE NO. 1:17-cv-0588-AWI-BAM<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>**ORDER STAYING THIS ACTION**<br><br>**ORDER REQUIRING LITHIA TO SUBMIT STATUS UPDATES** |

**I. Introduction**

Plaintiff Tony Clayborne ("Plaintiff") brings the instant putative class action, alleging violations of California's Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200, et seq. and the California Labor Code. Complaint, Doc. 1 ("Compl."). Plaintiff also brings an individual claim for sexual harassment in violation of California's Fair Employment and Housing Act, Cal. Gov. Code §§ 12900, et seq. *Id*. All of Plaintiff's claims relate to his employment with Defendants Lithia Motors, Inc. and Lithia Motors Support Services, Inc. (collectively "Lithia" or "Defendants") in Fresno, California. Lithia moves to stay or dismiss this action in light of the arbitration agreement that the parties entered into as a condition of Plaintiff's employment. Plaintiff opposes that motion on the grounds that the arbitration agreement is in violation of the National Labor Relations Act ("NLRA"), unconscionable, and otherwise unenforceable.

For the following reasons, Lithia's motion will be granted in part.

1

## II. Background

A. Wage and Hour Collective Action Allegations

Plaintiff was an employee of Lithia in Fresno, California. Plaintiff alleges that starting on March 24, 2013 and continuing at least to the date of filing of the Complaint, Lithia's commissioned California employees were not given paid rest breaks. Compl. at ¶¶ 18, 31. Instead, when rest breaks were afforded, they were unpaid. *Id*. at ¶ 31. Plaintiff further alleges that, as a result of the failure to give paid rest breaks, Defendants failed to pay the minimum wage for all hours worked. *Id.* at ¶ 34-35. Plaintiff characterizes the alleged failure to afford paid rest breaks and the corresponding failure to pay the minimum wage for all hours worked as unfair business practices giving rise to a separate claim under California Unfair Business Practices Act. *Id.* at ¶¶ 40-41.

Next, Plaintiff alleges that, starting on March 24, 2016 and continuing at least to the date of filing of the Complaint, Defendants failed to identify the applicable rates of pay on the wage statements that it issued to all California non-exempt employees. Compl. at ¶¶ 18, 37. Plaintiff also seeks to recover penalties based upon the same failure under California's Private Attorney General Act, on behalf of himself and all other aggrieved employees. *Id*. at ¶¶ 45-47.

B. Sexual Harassment Allegations

Separate from the collective claims set out above, Plaintiff alleges an individual claim for sexual harassment. Plaintiff alleges that on October 22, 2016, Plaintiff's coworker took a photo of Plaintiff and a second coworker. Compl. at ¶ 50. In the photo, Plaintiff sat in the passenger seat of a vehicle and the second coworker bent into the vehicle through the driver window[1] to retrieve a bag. *Id.* The photo taken in a manner that made it appear that the second coworker "was performing oral sex on Plaintiff." *Id*. The photo was captioned and distributed to unknown recipients "via text message and snapchat." *Id.* Another similar photo was sent on the same date by the same employee via the same means. *Id.* at ¶ 51. On the same date, "Plaintiff's desk manager" made a lewd, sexual joke, also making reference to Plaintiff's slight weight. Compl. at

---

[1] It is unclear whether the second coworker was in the vehicle and bent forward or outside of the vehicle and bent in. *See* Compl. at ¶ 50 (Second coworker "bent over to try to retrieve [a] bag" from inside of a vehicle where Plaintiff sat in the passenger seat.) For present purposes, the underlying facts make little difference.

¶ 52. Plaintiff's general manager[2] also made references to plaintiff's weight and joked about Plaintiff's mother. Compl. at ¶ 53. The following day, Plaintiff complained about the alleged misconduct to the Branch Manager.

On October 28, 2016, Plaintiff encountered a coworker outside of work. The coworker made a comment to plaintiff suggesting that Plaintiff was poor. Compl. at ¶ 55. Plaintiff worked a half-day on that date. *Id.* at ¶ 56. Plaintiff believes that the coworker who insulted him that morning falsely told Plaintiff's desk manager that Plaintiff left early for a "lunch date with Plaintiff's sister." *Id*. Three days later, Plaintiff complained to his "desk manager" about the same coworker's "inappropriate jokes" and explained that the conduct was "stressing him out." *Id*. Plaintiff's desk manager confronted plaintiff regarding the Plaintiff leaving work early on October 28.

On November 3, 2016, the coworker who took the allegedly lewd photo of Plaintiff confronted Plaintiff regarding the complaint that Plaintiff made to Human Resources. Compl. at ¶ 57.

On November 4, 2016, a different coworker "acted as if he was going to physically strike Plaintiff. He balled up his fists and flexed his shoulders and moved his shoulders and face forward as if he was going to strike Plaintiff." Compl. at ¶ 58.

C. The Arbitration Agreement

Plaintiff signed an arbitration agreement regarding claims arising out of his employment with Lithia, on January 21, 2016. The relevant language of the agreement is as follows:

> …I and [Lithia] both agree that any claim, dispute, and/or controversy that either party may have against one another (including, but not limited to, any claims of discrimination and harassment…) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and [Lithia]… arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law… shall be submitted to and determined exclusively by binding arbitration.

Declaration of Andrew J. Mailhot, Doc. 4-2 ("Mailhot Decl."), Exhibit A ("Arbitration

---

[2] Plaintiff refers to the same person as both "general manager" and "desk manager."

Agreement") at 4-5. That Arbitration Agreement prohibits collective arbitration: "In order to provide for the efficient and timely adjudication of claims, the arbitrator is prohibited from considering the claims of others in one proceeding." *Id*. at 5. The Arbitation Agreement further provides that the arbitration "shall be controlled by the Federal Arbitration Act [("FAA")]," *id.*, and that the "arbitrator ... shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of [the Arbitration agreement], including … that [the Arbitration Agreement] is void or voidable," *id*. at 6.

### III. Discussion

The parties ask to the Court to weigh in on the enforceability of the Arbitration Agreement. For the following reasons, the Court determines only that (1) the clause delegating authority to determine whether a claim is arbitrable to the arbitrator is clear and unmistakable and (2) that clause was not unconscionable. The selected arbitrator must determine whether the arbitration agreement is enforceable and whether Plaintiff's claim is within the scope of that agreement.

A. FAA Framework

The Federal Arbitration Act ("FAA") provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA espouses a general policy favoring enforcement of arbitration agreements. *See AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24–25 (1983). Nevertheless, an arbitration clause may be challenged by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (internal quotation marks omitted).

A party moving to compel arbitration must show two "gateway issues:" "(1) the existence

of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc*., 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted); *Brennan v. Opus Bank* 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). Ordinarily, whether the Court or the arbitrator decides arbitrability "is an issue for judicial determination." *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016). "However, [resolution of] these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide…'" their intent. *Brennan v. Opus Bank*, 796 F.3d at 1130 (9th Cir. 2015) (citing *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)); *accord Rent-A-Center*, 561 U.S. at 72 (directing courts to resolve only the validity of the delegation clause and leave any challenge to the validity of the agreement as a whole for the arbitrator); *Howsam v. Dean Whitter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("Whether the court or an arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'") In other words, the Court must decide whether the parties "clearly and unmistakably" agreed that the arbitrator, and not the Court, should determine arbitrability in the first instance.

Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.' " *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. at 68 (quoting 9 U.S.C. § 3). If all claims in litigation are subject to a valid arbitration agreement, the court may dismiss or stay the case under Section 3, *see Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *7–8 (N.D. Cal. Apr. 6, 2011), or compel arbitration under Section 4, *Rent-A-Center*, 561 U.S. at 70.

B. Express Delegation of the "Gateway" Arbitrability Question to the Arbitrator

Courts in this Circuit consistently hold that delegations of authority to the arbitrator to determine arbitrability of an action are enforceable when clearly and unmistakably made. *Oliver v. First Cen. Bank., N.A.*, 2017 WL 5495092, *2 (S.D. Cal. Nov. 16, 2017) (citing *Brennan v. Opus Bank*, 796 F.3d at 1130); *Esquer v. Education Management Corporation*, --- F.Supp.3d ----, 2017 WL 5194635, *3 (S.D. Cal. Nov. 9, 2017) (citation omitted); *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, *1 (N.D. Cal. Oct. 11, 2017) (citation omitted); *Han v. Synergy Homecare*

*Franchising, LLC*, 2017 WL 446881, *3 (N.D. Cal. Feb. 2, 2017). In such situations, the district court only determines whether the delegation itself is unconscionable. *Esquer*, 2017 WL 5194635, *3 (citing *Rent-A-Ctr.*, 561 U.S. at 71-74); *Han*, 2017 WL 446881, at *3; *cf Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law) ("[T]he Court's inquiry is 'limited ... [to] whether the assertion of arbitrability is 'wholly groundless.'")

The Arbitration Agreement expressly provides that the "arbitrator … [has] the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of [the Arbitration] Agreement, including … any claim that [the Arbitration] Agreement is void or voidable. Arbitration Agreement at 6. The Arbitration Agreement also expressly notes that the arbitration will be "controlled by the [FAA]…." *Id*. at 5. The delegation clause (and certainly the two clauses in conjunction) expresses a clear and unmistakable intent to delegate authority to the arbitrator to resolve the question of arbitrability. *Mohammed,* 848 F.3d at 1208-1209; *Brennan v. Opus*, 786 F.3d at 1130 ("[I]ncorporation of the [American Arbitration Association] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Esquer*, 2017 WL 5194635 at *4 (S.D Cal. Nov. 9, 2017). If the delegation of arbitrability is not unconscionable, the enforceability of the entirely arbitration agreement, including the waiver of the right to file a collective action, will be left to the arbitrator. *See Mohamed*, 848 F.3d at 1212; *Aanderud v. Superior Court*, 13 Cal.App.5th 880, 897 (Cal. Ct. App. 2017).

C. Unconscionability of the Delegation Clause

The Court's unconscionability review is limited to the delegation clause. *See Brennan v. Opus Bank*, 796 F.3d at 1132 (9th Cir. 2015). In determining whether the delegation clause is unconscionable, the Court applies California law. *Perry v. Thomas*, 482 U.S. 483, 493, n. 9 (1987). "[T]he core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (citations omitted). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th

6

223, 236 (2012). "Unconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Mohamed*, 848 F.3d at 1210 (applying California law), abrogated on other grounds, *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011)); *accord Ajamian v. CantorCO2e, L.P.*, 203 Cal.App.4th 771, 795 (Cal. Ct. App. 2012) (citing *Amendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000)). Both procedural and substantive unconscionability must be present in order for a court to find a contract unconscionable, but "they need not be present in the same degree." *Id*. at 1210.[3] The Court addresses both procedural and substantive unconscionability in turn below.

1. Procedural Unconscionability

Although Plaintiff's argument regarding unconscionability is targeted at the Arbitration Agreement as a whole, the Court will read it in relation to the delegation clause. First Plaintiff argues that the agreement is procedurally unconscionable because "there is clearly no mechanism with the Arbitration Agreement that allows plaintiff or any other employee to opt-out." Doc. 7 at 14. Plaintiff is certainly correct that Arbitration Agreement, with specific regard to the delegation clause, was part of a form contract that Plaintiff was only permitted to sign or reject in whole. Indeed, Plaintiff was not even provided a paper copy, he was directed to check boxes and no opportunity was provided to strike through or amend any portion.

That a contract is adhesive certainly weighs in favor of a finding that it is procedurally unconscionable, but it does not render a contract *per se* unconscionable. *Baker v. Academy of Art University Foundation*, 2017 WL 4418973, * 4 (N.D. Cal. Oct. 5, 2017) (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017)). Generally, "the adhesive nature of a

---

[3] Plaintiff repeatedly misrepresented the California law regarding unconscionability. Doc. 7 at 5 ("If an agreement is found to be procedurally and/or substantively unconscionable pursuant to Armendariz, it is unenforceable."), Doc. 7 at 14 ("[A]rbitration agreements cannot be enforced if they are procedurally or substantively unconscionable…."). Plaintiff represents that *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) *Amendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) both stand for the proposition that procedural *or* substantive unconscionability, standing alone, is sufficient to render an arbitration agreement unenforceable. Both of those cases explain that both substantive and procedural unconscionability are required, albeit not in the same degree. *Ingle*, 328 F.3d at 1170-1171; *Amendariz*, 24 Cal.4th at 114 ("The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.")

7

contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261-1262. However, in the employment context, California courts appear to find a higher level of procedural unconscionability when a contractual provision is part of a non-negotiable, "take-it-or-leave-it" style offer, where the employee or potential employee is faced with the choice of accepting the provision or losing (or not obtaining) employment. *See Ajamian*, 203 Cal.App.4th at 796 (citing, *inter alia*, *Amendariz*, 24 Cal. 4th at 115; *Wisdom v. AccentCare, Inc.*, 202 Cal.App.4th 591, 597 (Cal. Ct. App. 2012)); *Esquer*, 2017 WL 5194635 at *6. In any event, the adhesive nature of the present contract is oppressive enough to meet the minimum requisite level of procedural unconscionability. In other words, if a very strong showing of substantive unconscionability is made the showing of procedural unconscionability would be sufficient for the Court to conclude that the delegation clause is unconscionable and should not be enforced.

Second, Plaintiff argues that the Arbitration Agreement generally is unconscionable because he was not provided a copy of the rules of arbitration. This consideration does not impact the procedural unconscionability of the delegation clause. Whether or not Lithia provided Plaintiff with a copy of the rules of arbitration has no impact on whether Plaintiff's agreement that the arbitrator, rather than the Court, will decide the arbitrability of the claims was a product of surprise or oppression.

2. Substantive Unconscionability

Plaintiff's argument regarding substantive unconscionability relates only to whether a provision in an arbitration agreement purporting to waive the right to collectively litigate claims is unconscionable. That argument relates to the enforceability of the Arbitration Agreement, not the delegation to an arbitrator to determine the enforceability of the Arbitration Agreement. Accordingly, this Court does not resolve whether or not the waiver of collective litigation is enforceable; it is a question for the arbitrator. *Cf. Navarez*, 2017 WL 3492110 at *12-13 (suggesting that in some situations excessive cost of arbitrating the threshold question of arbitrability could be substantively unconscionable); *Aanderud*, 13 Cal.App.5th at 897 (same).

The delegation clause is not substantively unconscionable.

E. Conclusion

Because the delegation clause is clear and unmistakable and not substantively unconscionable, it is enforceable. Plaintiff will be compelled, pursuant to Section 4 of the FAA, to arbitrate the threshold question of arbitrability. 9 U.S.C. § 4.

E. Lithia's Request to Stay or Dismiss the Action

Lithia asks the court to stay or dismiss this action. This Court has the discretion to stay or dismiss because it has found that the threshold question of arbitrability is delegated to the arbitrator. *See* 9 U.S.C. § 3; *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, *18 (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). This Court will stay the action pending the arbitrator's threshold determination regarding arbitrability of the action.[4] Plaintiff and Lithia will be required to provide joint status updates every sixty days until the arbitrator resolves the threshold question. Within fourteen days of the arbitrator's determination of arbitrability, Plaintiff and Lithia must submit a joint status update, informing the Court of the arbitrator's determination.

## IV. Order

Based on the foregoing, IT IS HEREBY ORDERED that Lithia's motion to compel arbitration is GRANTED in part as follows:

1. This action is STAYED as to all parties and claims;
2. All causes of action alleged in Plaintiff's complaint shall be submitted to the arbitrator for the arbitrator to make the threshold arbitrability determination regarding those claims;
3. Plaintiff and Lithia shall submit joint status updates as set out in Section IV(E), *supra*.

IT IS SO ORDERED.

Dated:  December 5, 2017  _____
SENIOR DISTRICT JUDGE

---

[4] The Court recognizes the potential prejudice that Plaintiff and the putative class members might suffer from running of the limitations period if the Court dismisses the action without prejudice and it is later determined that the claims are not arbitrable. In order to avoid that possibility, and because it places little burden upon the Court, the Court stays rather than dismisses this action.